**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.

**TONY LEE COFFMAN,**

    **Defendant.**

:

:

:

Case No. 2:22-cr-154
Judge Sarah D. Morrison

**OPINION AND ORDER**

This matter is before the court on two motions to dismiss a federal indictment charging Defendant Tony Lee Coffman with violations of the Lacey Act, 16 U.S.C. § 3371. Defendant moves to dismiss the indictment for lack of venue (ECF No. 17) and because American Ginseng is not a "plant" under the Lacey Act (ECF No. 18). In the alternative, Defendant requests transfer of the case to Southern District of West Virginia. (ECF No. 17.) The motions are fully briefed.

For the reasons set forth below, Defendant's motions and request to transfer venue are **DENIED.**

**I.    BACKGROUND**

    **A.    American Ginseng**

Defendant is a licensed dealer of wild American ginseng who operates his business out of Birch River, West Virginia.[1] (ECF No. 2, PAGEID # 3.) American

---

[1] Birch River is located within the Southern District of West Virginia.

ginseng (*Panax quinquefolius*) is a plant native to North American forests. *See American Ginseng*, U.S. FISH & WILDLIFE SERV., https://perma.cc/EWX4-7HNL. It is listed in Appendix II of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") and is protected by state law in Ohio and West Virginia. Ohio Rev. Code § 1533.87; West Virginia Code § 19-1A. Due to the high value of American ginseng, is particularly vulnerable to overharvesting, and federal law requires that states adopt ginseng protection programs to ensure survival of the species in the wild. *See* 50 C.F.R. § 23.68; *see also* Ohio Admin. Code § 1501:31-40 (Ohio's Ginseng Management Program); West Virginia Code § 19-1A (West Virginia's Ginseng Management Program).

### B. The Indictment

On August 23, 2022, a federal grand jury returned an indictment charging Defendant with six violations of the Lacey Act. (ECF No. 2.) Specifically, Counts One and Two of the indictment charge Defendant with trafficking American Ginseng in violation of 16 U.S.C. §§ 3372(a)(2)(B)(i), (a)(4), and 3373(d)(1)(B), and Counts Three through Six charge Defendant with knowingly falsely labeling American ginseng in violation of 16 U.S.C. §§ 3372(d)(2) and 3373(d)(A)(ii).

The factual allegations are that over the course of several years, Defendant purchased American ginseng with knowledge that it was harvested in and unlawfully transported from Ohio; that he engaged in the sale and purchase of that ginseng; and, in doing so, submitted false records indicating that the Ohio ginseng

2

was harvested in West Virginia. (*Id.* 6–9.) For each count, it is alleged that unlawful conduct took place "within" or "in the Southern District of Ohio and elsewhere." (*Id.*)

Defendant now moves to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Civil Procedure for improper venue and failure to state an offense.

## II. STANDARD OF REVIEW

Rule 12 of the Federal Rule of Criminal Procedure states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also* 12(b)(3)(A)(i) (improper venue); 12(b)(3)(B)(v) (failure to state an offense). The Court can rule on a motion to dismiss before trial "if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997); *see also United States v. Med 1st*, No. 3:16-CR-000076-JHM, 2017 WL 4848823, at *1 (W.D. Ky. Oct. 26, 2017) ("The Court 'may make preliminary findings of fact necessary to decide the questions of law presented by a pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'") (quoting *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)). When ruling on a pretrial motion to dismiss, the Court reads the indictment "as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007) (citing *United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir.1996) (*en banc*)). "An

indictment is to be construed liberally in favor of its sufficiency." *McAuliffe*, at 531 (citing *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002)).

### III. MOTION TO DISMISS BECAUSE AMERICAN GINSENG IS NOT A "PLANT" UNDER THE LACEY ACT

Federal R. Crim. P. 7(c)(1) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . .." An indictment is constitutionally sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Apart from protecting the rights of the accused, the constitutional requirements of a valid indictment further "inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. . .." *Russell v. United States*, 369 U.S. 749, 768 (1962).

The indictment charges Defendant with trafficking and falsely labeling American ginseng in violation of the Lacey Act, which prohibits such activities involving "plants." Thus, for the indictment to be legally sufficient, wild American ginseng must be a "plant" under the Act.

Defendant argues that the indictment does not state an offense because wild American Ginseng is a "common food crop" excluded from the definition of "plant." (ECF No. 18-1, PAGEID 68–76.) In response, the Government argues that American

4

Ginseng is exempt from the "common food crop" exclusion because it is listed as a threatened species in CITES and is protected by Ohio law. (ECF No. 23, PAGEID # 158–62.)

### A. The Lacey Act and Related Regulations

The Lacey Act defines "plant" as "any wild member of the plant kingdom, including roots, seeds, parts, or products thereof, and including trees from either natural or planted forest stands." 16 U.S.C. § 3371(g)(1). The Act then carves out three exclusions from the general definition:

> (2) Exclusions
> The terms "plant" and "plants" exclude--
>
> > (A) common cultivars, except trees, and common food crops (including roots, seeds, parts, or products thereof);
> >
> > (B) a scientific specimen of plant genetic material (including roots, seeds, germplasm, parts, or products thereof) that is to be used only for laboratory or field research; and
> >
> > (C) any plant that is to remain planted or to be planted or replanted.

16 U.S.C. § 3371(g)(2).

The definition also includes a threatened species exception to the exclusions in subparagraphs (B) and (C). 16 U.S.C. § 3371(g)(3). However, the Act does not define "common food crop" or provide any exception to that exclusion. Instead, Congress directed the Secretary of Agriculture and Secretary of the Interior to promulgate regulations defining the term. 16 U.S.C. § 3376(c).

Pursuant to that authority, the Department of Agriculture adopted the following regulatory definition of "common food crop":

5

A plant that:

(1) Is raised, grown, or cultivated for human or animal consumption; and

(2) Is a species or hybrid, or a selection thereof, that is produced on a commercial scale; and

(3) Is not listed:

> (i) In an appendix to the Convention on International Trade in Endangered Species of Wild Fauna and Flora (27 UST 1087; TIAS 8249);
>
> (ii) As an endangered or threatened species under the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.); or
>
> (iii) Pursuant to any State law that provides for the conservation of species that are indigenous to the State and are threatened with extinction.

7 C.F.R. § 357.2. The threatened species exception in subsection (3) is identical to that included in 16 U.S.C. § 3371(g)(3) of the Lacey Act.

### B. The regulatory definition for the "common food crop" exclusion is entitled to *Chevron* deference.

Where, as here, Congress is silent as to the meaning of a term and expressly delegates authority to an administrative agency to fill the gap, "regulations made pursuant to that delegation are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Atrium Med. Ctr. v. U.S. Dep't of Health & Hum. Servs.,* 766 F.3d 560, 566 (6th Cir. 2014) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984)). *See also Gun Owners of Am., Inc. v. Garland,* 19 F.4th 890, 900 (6th Cir. 2021) (*Chevron* deference applies to interpretation of criminal statutes) (collecting cases). For a

6

regulatory definition to control, it must conform with the statutory text and purpose. *See Oakbrook Land Holdings, LLC v. Comm'r of Internal Revenue*, 28 F.4th 700, 718 (6th Cir. 2022).

The parties agree that subsections (1) and (2) of the regulatory definition of "common food crop" are valid and entitled to *Chevron* deference. According to the Government the threatened species exception in subsection (3) is also valid because it is consistent with text and purpose of the Act. (ECF No. 23, PAGEID # 158–62.) In contrast, Defendant argues that subsection (3) is inconsistent with Lacey Act under the canon of construction *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another). (ECF No. 26, PAGEID # 179.) He argues that because Congress applied an identical threatened species exception to some exclusions from the general definition of "plant" but not to the "common food crop" exclusion, *see* § 3371(g)(3), that Congress implicitly intended for the exception not to apply to common food crops.

If the definition in § 3371(g) were Congress's the last word on the matter, the Court might agree with Defendant, but it is not. In § 3376(c), Congress explicitly identified the need to clarify the "common food crop" exclusion and directed administrative agencies to provide a definition. It is, therefore, unsurprising that Congress did not include any exceptions for a term that was not yet defined. The threatened species exception within the regulatory definition of "common food crop" is consistent with the statutory text.

7

The regulatory definition is also consistent with statutory purpose of the Act, which is to provide a federal mechanism for enforcing state laws that sought to protect fish, plants, and wildlife but were unable to do so because they could not reach into neighboring states. *See United States v. McNab*, 331 F.3d 1228, 1238 (11th Cir. 2003), *as amended* (May 29, 2003) (collecting authority). Without the threatened species exception, wild plants that are capable of cultivation are excluded from the Act's protective reach, even if they are protected by state and federal law.

In support of his motion, Defendant relies on *United States v. McCullough*, 891 F. Supp. 422 (N.D. Ohio 1995), which held that American ginseng was a "common food crop." However, this case was decided before Congress amended the Lacey Act in 2008 to require agency clarification on that exclusion. In fact, *McCullough* and the unique situation posed by American ginseng is cited in the legislative history of the 2008 Amendments to demonstrate the need for agency clarification on the matter:

> The Managers are aware that some plant species produced in agricultural settings as cultivars or for food, food supplements, or medicines, also continue to be taken from the wild in volumes that threaten the conservation of these species. For example, the Court in *United States v. McCullough*, 891 F. Supp. 422 (N.D. Ohio 1995) read the current Lacey Act exclusion from the definition of plant for "common food crops and cultivars" as applying to American ginseng, a species that is artificially produced but also threatened in the wild by unsustainable exploitation. Therefore, the Managers added [§ 3376(c)] to the Act to help clarify the terms of this exclusion such that trade in cultivars and common food crops is not unduly burdened, while wild plant species threatened with extinction (which may also be artificially

8

> produced) are adequately protected from illegal and unsustainable exploitation.

H.R. CONF. REP. NO. 110-627, at 895–96 (2008), *as reprinted in* 2008 U.S.C.C.A.N. 536, 339. Given these concerns, it is significant that states are required to adopt laws balancing commerce of cultivated American ginseng with the conservation of the species in the wild. *See* 50 C.F.R. § 23.68. That such laws are included as a source for the threatened species exception further bolsters consistency of the regulatory definition with the history and purpose of the Act. Rather than being at odds with the Lacey Act, the regulatory definition of "common food crops" is entirely consistent with the text, purpose, and history of the Act and, as such, it is given controlling weight.

Because wild American ginseng is listed in CITES and is protected by Ohio law it is exempt from exclusion as common food crop and is a "plant" under the Lacey Act. Therefore, the indictment adequately alleges violations of the Lacey Act, and Defendant's motion to dismiss the indictment for failure to state an offense is **DENIED**.

## IV.   MOTION TO DISMISS FOR LACK OF VENUE

Defendant argues that venue is improper because the Government cannot prove that he took any overt action within the Southern District of Ohio. (ECF No. 17-1, PAGEID # 60–62.) In response, the Government argues that venue is proper under to 18 U.S.C. § 3237 because Defendant has been charged with a "continuing offense." (ECF No. 22, PAGEID # 151–54.)  In reply, Defendant argues that

application of § 3237 to the charged offenses would stretch the venue provision beyond constitutional limits. (ECF No. 25, PAGEID # 170–74.) Alternatively, Defendant requests that the case be transferred to the Southern District of West Virginia pursuant to Fed. R. Crim P. 21 for the convenience of the parties and witnesses. (*Id.* PAGEID # 62–63.) The Government responds that the circumstances of the case do not support transfer. (*Id.* PAGEID # 154–56.)

### A. Venue is proper on the face of the indictment.

Criminal defendants have a constitutional right to be tried in the state where the offense was committed. *See* U.S. Const. art. III, § 2, cl. 3 ("Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed"); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"). The Federal Rules of Criminal Procedure further provide that "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

Congress has the authority to define venue for federal offenses by defining the locality of a substantive offense. *United States v. Canal Barge Co.*, 631 F.3d 347, 351 (6th Cir. 2011); *see also United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir. 1976) ("The constitutional standards for venue concern the locality of the substantive offense rather than the location of the offender at the time of the offense.") (citing *Armour Packing Co. v. United States,* 209 U.S. 56, 76 (1908)).

The Lacey Act states that venue provisions in Title 18 and 28 apply to any actions arising under the Act. 16 U.S.C.A. § 3375. For continuing offenses, or offenses committed in more than one district, 18 U.S.C. § 3237(a) contains a catch-all venue provision. *Id.* The catch-all provision states that for any offense "begun in one district and completed in another, or committed in more than one district," venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a) ¶ 1. In addition, the second paragraph states that "[a]ny offense involving. . . transportation in interstate or foreign commerce. . . is a continuing offense" and such offenses "may be inquired of and prosecuted in any district from, through, or into which such commerce. . . moves." 18 U.S.C. § 3237(a) ¶ 2. To be an offense "involving" transportation in interstate commerce, it is sufficient that the Government must prove transportation in interstate commerce as an element of the offense. *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). For example, an offense requiring proof of the defendant's knowledge that child sexual abuse materials were transported in interstate commerce is a continuing offense "involving transportation." *United States v. Kapordelis*, 569 F.3d 1291, 1307–08 (11th Cir. 2009).

To confirm that venue is constitutional in a given district, the Sixth Circuit applies the substantial contacts test. *United States v. Castaneda*, 315 F. App'x 564, 569 (6th Cir. 2009). In applying this test, the Court examines the "site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding."

*United States v. Williams*, 788 F.2d 1213, 1215 (6th Cir.1986). So long as the contact is substantial, any one factor or combination of factors may be determinative. *See United States v. Elliott*, 876 F.3d 855, 862 (6th Cir. 2017) (venue proper in district where harmful effects of a continuing offense were foreseeable to defendant); *United States v. Hagar*, 822 F. App'x 361, 371 (6th Cir. 2020) (venue proper in district where some evidence and the "locus of the effect" were found). *See also United States v. Reed*, 773 F.2d 477, 482 (2d Cir. 1985) ("[P]laces that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring.").

The indictment alleges that each offense occurred within "Southern District of Ohio and elsewhere." (ECF No. 2, PAGEID # 6–8.) Although the Government must prove venue by a preponderance of the evidence at trial, *Grenoble*, at 573, this is sufficient to establish venue at this stage.

More specifically, on Counts One and Two, Defendant is charged with Lacey Act Trafficking:

> [W]ithin the Southern District of Ohio and elsewhere, defendant TONY LEE COFFMAN did knowingly, and knowingly attempt to, receive, acquire, and purchase wild American ginseng, knowing that said ginseng had been transported in interstate and foreign commerce in violation of, and in a manner unlawful under, the laws and regulations of the state of Ohio that protects American ginseng, specifically [Ohio Admin. Code § 1501:31-40-03(E), and did knowingly engage in conduct that involved the sale and purchase of, and the offer of sale and purchase of, wild American ginseng having a market value greater than $350.

12

(Indictment, ECF No. 2, PAGEID # 6–7). Ohio Admin. Code § 1501:31-40-03(E) states that "[n]o person shall export ginseng collected or grown in Ohio from the state until it has first been certified by a state inspector for the division of wildlife." Thus, the necessary implication of the allegation that the ginseng was transported in a manner unlawful under the Ohio Admin. Code § 1501:31-40-03(E) is that it originated in and was transported from Ohio. This, coupled with the initial allegation that the conduct occurred in the Southern District of Ohio, is sufficient to establish venue for Counts One and Two pursuant to 18 U.S.C. § 3237(a) ¶ 2.

On Counts Three though Six, Defendant is charged with False Labeling under the Lacey Act:

> [I]n the Southern District of Ohio and elsewhere, defendant TONY LEE COFFMAN did knowingly make and submit, and cause to be made and submitted, a false record, account, and label for, and false identification of, Ohio ginseng root which had been and was intended to be transported in interstate and foreign commerce, and such conduct involved the sale or purchase, offer of sale or purchase, and commission of an act with intent to sell or purchase, ginseng root with a market value greater than $350, in that TONY LEE COFFMAN, in a Ginseng Dealers 30-Day Report, falsely reported that Ohio ginseng root he purchased had been dug in [Kanawha and Boone County] West Virginia.

(Indictment, ECF No. 2, PAGEID # 7–9) (emphasis added). As with the previous counts, the Government alleges that the ginseng originated in Ohio and was transported in interstate commerce. Thus, venue is proper for Counts Three through Six pursuant to 18 U.S.C. § 3237(a) ¶ 2.

Finally, applying the substantial contacts test confirms the constitutionality of venue in this district. Even if defendant's conduct took place outside of this

13

district, the nature of the crimes, location of the evidence, and the "locus of effect" support venue here. In particular, the harmful effect on the survival of wild American ginseng is felt almost exclusively within the Southern District of Ohio. Moreover, the Government must prove that the Defendant knew that the ginseng he trafficked and falsely labeled originated in Ohio; if he had such knowledge, the detrimental effects of Defendant's conduct were foreseeable to him when he carried out each offense.

Accordingly, Defendant's motion to dismiss the indictment for improper venue is **DENIED**.

### B. Transfer of venue is not warranted.

The Federal Rules of Criminal Procedure allow for transfer of venue "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b). To determine whether the case should be transferred for convenience, the Court considers the following factors: (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceeding; (4) the location of relevant documents and records; (5) disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *United States v. Micciche*, 165 F. Appx 379, 385 (6th Cir. 2006) (citing *Platt v. Minnesota Mining & Manufacturing, Co.,* 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)). The Court has discretion "to

balance these factors and determine which factors are of greatest import." *United States v. Collins*, 955 F.2d 45 (6th Cir. 1992).

Only six of the ten factors are at issue here. Defendant argues that the Southern District of West Virginia is more convenient because the defendant, possible witnesses for the defense, documentary evidence, events likely to be at issue, and defense counsel are located in that district. (ECF No. 17-1, 63.) Defendant also argues that the cultural significance of harvesting ginseng in West Virginia is a special element that might affect transfer. (*Id.*)

On the other hand, the Government argues that the case agents, civilian witnesses for the government, documentary evidence, events likely to be at issue, and counsel for the government are located within the Southern District of Ohio. (ECF No. 22, 154–55.) In particular, the Government identifies that its civilian witness would be burdened by the time and cost of traveling to the Southern District of West Virginia. Finally, the Government argues that the cultural significance of ginseng harvesting is not relevant to transfer.

To begin, the cultural significance of ginseng harvesting is not relevant to transfer. Even if it were, harvesting wild ginseng is embedded in the cultural heritage of the entire Appalachian region—portions of which are located within the Southern District of Ohio. *See American Ginseng*, U.S. FISH & WILDLIFE SERV., https://perma.cc/EWX4-7HNL; Emily Cataneo, *In Appalachia, a Plan to Save Wild Ginseng*, UNDARK MAGAZINE (Nov. 4, 2020), https://perma.cc/JS98-AVRL. (*See also* Growing American Ginseng in Ohio, ECF No. 18-5.)

15

Looking to the *Platt* factors, the location of witnesses, documents, and counsel weigh neutrally on the propriety of transfer. As to the events likely to be at issue, Defendant argues that that because the Government does not anticipate presenting evidence that he was ever in Ohio, it cannot argue that the "events likely to be at issue" factor supports venue in this district. (Reply, ECF No. 25, PAGEID # 174.) In so arguing, Defendant conflates his own physical presence with events likely to be at issue in his prosecution. Critical to the Government's case on each count is that the ginseng at issue originated in and was transported from Ohio. Although it is possible that Defendant was not in the state when these events occurred, they are, nevertheless, likely to be at issue. Because events likely to be at issue occurred in both districts, this factor also weighs neutrally on transfer.

That leaves the location of the defendant; while Defendant's location weighs in favor of transfer, this factor alone is insufficient to support transfer to another district. Accordingly, Defendant's request to transfer venue to the Southern District of West Virginia is **DENIED**.

## V.   CONCLUSION

For the reasons stated herein, Defendants Motions to Dismiss the Indictment and request to transfer venue are **DENIED**. (ECF Nos. 17, 18).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

16